## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FILED
LOGGED

ENTERED
RECEIVED

MAY 23 2017

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY

DEPUTY

KEVIN RICHARDSON
Consumer/ Plaintiff

v.

SHAPIRO & BROWN, LLP., ET AL.
Defendant

Case Number: 1:17-CV-00307

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS RESPONSE TO DEFENDANT

## SHAPIRO & BROWN LLP.'S

## MOTION TO DISMISS ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THIS COURT:**

The Consumer/Plaintiff, Kevin Richardson, asks the court to deny the Defendant, Shapiro &

Brown LLP's Motion to Dismiss for Failure to State a Claim Upon Which Relief May be

Granted and states as follows:

## INTRODUCTION

1. Plaintiff is Kevin Richardson; Defendant which relates to this response is Shapiro & Brown

   LLP. ( hereafter S&B)

1

2. Plaintiff has sued S&B for violations of the Fair Debt Collection Practices Act (FDCPA) which occurred in 2016.

3. Defendant S&B has filed a Motion to Dismiss (hereafter MTD) for Failure to State a Claim Upon Which Relief May be Granted.

4. Plaintiff files this response asking the court to deny the Defendant S&B's MTD.

## STANDARD OF REVIEW

5. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "In its determination, the court must consider all well-pled allegations in a complaint as true", *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), "and must construe all factual allegations in the light most favorable to the plaintiff." *See* Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir.1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993)).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Id*. At 555. "[W]e do not require heightened fact pleading of specifics, but only

enough facts to state a claim to relief that is plausible on its face." *Id.* At 570. "In considering

a motion to dismiss under Rule 12 (b)(6), a court " `must accept as true all of the factual

allegations contained in the complaint,'"and must" `draw all reasonable inferences [from

those facts] in favor of the plaintiff.'", "The complaint need not contain "detailed factual

allegations," but must contain sufficient factual allegations to suggest the required elements

of a cause of action." *Nemet Chevrolet, Ltd. v. Consumer Affairs. com, Inc.591 F. 3d 250*

*-Court of Appeals, 4th Circuit, 2009*

6. A plaintiff satisfies their burden if they allege facts sufficient to allow a court to infer "more

than the mere possibility of misconduct". *Ashcroft v. Iqbql*, 129 W.Ct. 1937, 1950 (2009).

7. Well-pleaded allegations of fact and every inference fairly deducible therefrom are

accepted as true for purposes of a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 93-94

(2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and "that recovery is very remote and unlikely." *Twombly*,

550 U.S. at 556.

8. "A complaint, or portion thereof, should only be dismissed for failure to state a claim

upon which relief may be granted if it appears beyond doubt that plaintiff can prove

set of facts in support of the claim or claims that would entitle him to relief."

*Hishon v. King & Spalding*, 467 US 69 – Supreme Court 1984. "In determining

whether a complaint states a claim on which relief may be granted, the court accepts as

true the allegations in the complaint and construes the allegations in the light most

favorable to the plaintiff." *Id.*

9. "Pro se complaints are held to a less stringent standard than those drafted by attorneys,

and a federal district court is charged with liberally construing a complaint filed by a

pro se litigant to allow the development of a potentially meritorious case." *Gordon v. Leeke*, 574 F. 2d 1147 - Court of Appeals, 4th Circuit 1978. "A pro se litigant's complaint should not be dismissed unless it appears beyond doubt that the litigant can prove no set of facts in support of his claim that would entitle him to relief." *Id.*
"With respect to a pro se plaintiff, a district court has a duty to give the plaintiff "the benefit of a liberally construed complaint." *Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985).* The Fourth Circuit has expressed "the indisputable desire that [pro se] litigants with meritorious claims should not be tripped up in court on technical niceties." Id. At 1277-78." *Neild v. Wolpoff & Abramson, 453 F. Supp. 2d 918 - Dist. Court, ED Virginia 2006*

10. "In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff." *Edwards v. City of Goldsboro*, 178 F. 3d 231 - Court of Appeals, 4th Circuit 1999.

## ARGUMENTS AND AUTHORITIES

### THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.

11. The FDCPA, 15 U.S.C. § 1692, et seq., is a strict liability statute. "The FDCPA is a strict liability statute and a consumer only has to prove one violation to trigger liability." *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582 - Dist. Court, D. Maryland 1999.

### THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF

## CONSUMER DEBTORS

**12**. The FDCPA is a remedial statute. "To effectuate the FDCPA's remedial purpose, most courts

interpret the bona fide error defense narrowly." *Akalwadi v. Risk Management Alternatives,*

*Inc.*, 336 F. Supp. 2d 492 - Dist. Court, D. Maryland 2004. "...contesting the debt best

promotes the remedial nature of the FDCPA because it preserves debtors' abilities to obtain a

remedy for violations of the statute. *See Atchison, Topeka & Santa Fe Ry. Co. v. Buell,*

(recognizing the canon of statutory interpretation that remedial statutes are to be construed

liberally)" Russell v. Absolute Collection Services, Inc.763 F. 3d 385 - Court of Appeals, 4th

Circuit, 2014


## THE FDCPA BROADLY PROHIBITS UNFAIR OR UNCONSCIONABLE COLLECTION METHODS, CONDUCT WHICH HARASSES, OPPRESSES OR ABUSES ANY DEBTOR, AND ANY FALSE, DECEPTIVE OR MISLEADING STATEMENTS, IN CONNECTION WITH THE COLLECTION OF A DEBT.


**13**. The Fair Debt Collection Practices Act. ("FDCPA") is a comprehensive statute which

prohibits a catalog of activities in connection with the collection of debt by third parties. See

15 U.S.C. § 1692 et seq. The FDCPA imposes civil liability on any person or entity that

violates its provisions, and establishes general standards of debt collector conduct, defines

abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative

provisions of the FDCPA declare certain rights to be provided to or claimed by debtors,

forbid deceitful and misleading practices, both generally and in a specific list of disapproved

practices, and prohibit harassing and abusive tactics both generally and in a specific list of disapproved practices.

14. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692(b). It is the express purpose of the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

15. Accordingly, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action.  Simply it was designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false deceptive or misleading statements, in connection with the collection of a debt. *Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982); *Heintz v. Jenkins*, 514 U.S. 291 (1995); *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992).

16. **Plaintiff Is A "Consumer" As Defined By The FDCPA.**

"Consumer" is defined by the FDCPA as "any natural person obligated or alleged to be obligated to repay a debt." 15 U.S.C § 1692a(3). Plaintiff has alleged that he is a "consumer"

as defined by 15 U.S.C. § 1692a(3), and that he incurred the debt allegedly due a third party

primarily for personal, family, or household purposes.

17. **Defendant Is A "Debt Collector" As Defined By The FDCPA.**

"Debt collector" is defined by the FDCPA as "any person who uses any instrumentality of

interstate commerce in any business the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another." 15 U.S.C § 1692a(6). Plaintiff has

alleged that Defendant S & B is a "debt collector" within the meaning of 15 U.S.C. §

1692a(6).

18. **Plaintiff's Alleged Obligation Is A "Debt" As Defined By The FDCPA.**

"Debt" is defined by the FDCPA as "any obligation or alleged obligation of a consumer to

pay money arising out of a transaction in which the money, property, insurance, or

services which are the subject of the transaction are primarily for personal, family, household

purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C §

1692a(5). Plaintiff has alleged that Defendant Nationstar claims that Plaintiff is obligated, or

allegedly obligated, to pay a consumer debt.

19. Defendant S&B has filed a Motion to Dismiss for Failure to State a Claim for Which

Relief Can be Granted. The Plaintiff will address S & B's points it has raised in it's

Motion in order as they were addressed.

20. All other claims alleged in the Complaint, that were not addressed in S&B's Motion,

have not been disputed by S&B, and thus, have been admitted to be true and correct and

should survive its MTD.

21. In the introduction and background section of the current MTD, there are several mis-

characterizations and misrepresentations. The plaintiff will address these statements that are not in fact correct, and will point out to the court that these points addressed by S&B do not have anything to do with this present matter. This present action deals with S&B's actions, as a debt collector, and alleged violations of the FDCPA in attempting the collection of an alleged debt. That is the only thing this court should consider in this matter. The plaintiff merely is addressing them as clarification of these points and asks the court to not consider them in S&B's MTD, if the court determines they don't apply to the alleged FDCPA violations.

22. In the introduction and background section, S&B states;

1. "The borrower subsequently defaulted in payment on the Note on January 1, 2011, by failing to pay real property taxes and maintain insurance on the property pursuant to the explicit terms of the Deed of Trust." This is not correct. The obligation to pay any real property taxes and any property insurance payments was the loan servicers duty and obligation, not the borrowers. That's why there was, allegedly, an escrow account.

1a. Besides that point, it is not about the validity of the alleged debt or any amount alleged to be owed. "Importantly, the question of whether the consumer actually owes the alleged debt has no bearing on FDCPA claims"*McCartney v. First City Bank, 970 F. 2d 45 - Court of Appeals, 5th Circuit 1992.* "FDCPA claims focus on the misconduct of the debt collector, regardless of the existence, or amount, of any debt that the debtor might owe" *Karnette v. Wolpoff & Abramson, LLP, Dist. Court, ED Virginia 2007.* "FDCPA claim is an independent claim that has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt." "This litigation, therefore, does not concern the validity or the amount of the debt owed; it is about whether Defendant violated the FDCPA"

*Willis v. CAVALRY INVESTMENTS, LLC, Dist. Court, SD Georgia 2016*

**2.** "The borrower unsuccessfully sought to challenge Nationstar's right of enforcement of the Deed of Trust by filing a motion to stay and dismiss the collateral state court foreclosure action." This is not the case. The plaintiff never filed a motion to stay and dismiss in the state matter. The only document that was filed by the plaintiff here was a Notice of Dispute, according to the FDCPA guidelines. (EX. 1) The action in the state court is a debt collection action, by a debt collector.

**3.** "The borrower then initiated the instant case," inferring that this present case was filed after March 30, 2017, when in fact, it was filed almost two months earlier on February 1, 2017, and S&B was served roughly 2 to 3 weeks after the filing date.

**4.** "the borrowers complaint is…. an end run around of the Maryland foreclosure process". The plaintiff is merely exercising his rights as a consumer as Congress intended, by attempting to hold any debt collectors in this matter liable for their respective alleged violations in a debt collection attempt. It is the express purpose of the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The FDCPA….is 'primarily self-enforcing'….through private causes of action."*West v. Costen, 558 F. Supp. 564 - Dist. Court, WD Virginia 1983. "The committee views this legislation as primarily self-enforcing;* consumers who have been subjected to collection abuses will be enforcing compliance" - Senate Report No. 95-382, at 5 (Aug. 2, 1977), reprinted in 1977 U.S.C.C. & A.N. 1695, 1699. "Congress encouraged private enforcement [of the FDCPA] by permitting aggrieved individuals to bring suit as

private attorneys general" (citing *Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir.2008)*)). "These interlocking statutory features demonstrate that Congress intended to achieve its goal of regulating debt collectors' conduct by motivating consumers to bring enforcement actions if they are the targets of unlawful collection efforts.**" *Tourgeman v. Collins Financial Services, Inc.*, 755 F. 3d 1109 - Court of Appeals, 9th Circuit, 2014

**5.** "The foundation of the borrowers case originates with his dispute to the state court foreclosure case". This again is not the case. The foundation of this case originates from the Notice of Dispute and Demand for Verification dated December 15, 2015, that defendant S&B included here as exhibit F. The Notice of Dispute referred to here, on page 2 of the MTD, is what the plaintiff here filed into the state court action. (S&B's EX. C)

**23.** In the Statement of Facts, S&B states "the complaint states that the plaintiff is without knowledge of the debt". What was in fact stated in paragraph 11 of the complaint is "the consumer is without knowledge of the alleged debt defendants claim is owed to them under the account numbers they have stated in their letters to the plaintiff." This is an omission by S&B and a difference the plaintiff thinks needed to be pointed out.

**24.** In the statement of facts, S&B states "The borrower omits material, supported by public records." The plaintiff states that not all documents in the public record are self-authenticating, such as assignments of Deeds and/or Notes, and are only facially valid, unless the authenticity is disputed. "Business and **public records** are generally admissible absent confrontation", *Melendez-Diaz v. Massachusetts* 129 S. Ct. 2527, 557 US 305, 174 L. Ed. 2d 314 - Supreme Court, 2009, also cited by *US v. Dale*, Court of Appeals, 4th Circuit, 2012, "Both documents are public records…. And though both documents are photocopies of the originals, "[a] duplicate is admissible to the same extent as the original unless a genuine

question is raised about the original's authenticity",*KHATANA v. Washington Metropolitan Area Transit Authority*, Dist. Court, D. Maryland, 2017, "The Fourth Circuit has held that "[t]he admissibility of a public record specified in [Rule 803(8)] is assumed as a matter of course unless there are sufficient negative factors to indicate a lack of trustworthiness." *IN RE CR BARD, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION* Dist. Court, SD West Virginia, 2013, citing *Zeus Enters., Inc. v. Alphin Aircraft, Inc.,* 190 F.3d 238, 241 (4th Cir. 1999).

25. Also in the statement of facts, it is stated" The plaintiff contends the S&B pursued collection efforts without verifying his debt, despite the fact that the law does not impose an affirmative burden to verify such debt." 15 U.S.C § 1692g(b) is very clear that if a debt collector wants to continue with collection efforts, after the initial communication, and receives a notice of dispute from the consumer, it must verify/validate the alleged debt before it can continue collection actions, which it did not do in this case. 15 U.S.C § 1692g(b) states; "If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the

name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

**26.** Defendant S&B states on page 6 of its MTD that the court "may take judicial notice of additional facts that are either matters of common knowledge or capable of certain verification. Included in the 'capable of certain verification' category are facts 'capable of immediate and certain verification by resort to sources whose accuracy is beyond dispute," citing *Paya v. Almaraz*, and *Anheuser-Busch, Inc. v. Schmoke, 63 F. 3d 1305 - Court of Appeals, 4th Circuit 1995,* and others. This court may also take judicial notice that neither Nationstar Mortgage LLC. (Nationstar) or S&B complied with the Notice of Dispute filed by the plaintiff into the state level court debt collection action. The doctrine of judicial notice substitutes for formal proof of a fact "when formal proof is clearly unnecessary to enhance the accuracy of the fact-finding process." *Smith v. Hearst Corp.,* **48 Md.App. 135, 136, 426 A.2d 1 (1981)** A court may judicially note facts that readily can be determined by examination of a source whose accuracy cannot be reasonably questioned. Md. Rule 5-201(b). Included among the categories of things of which judicial notice may be taken are "facts relating to the ... records of the court." *Smith,* **48 Md.App. at 136 n. 1, 426 A.2d 1**. *Lerner v. Lerner Corp., 750 A. 2d 709 - Md: Court of Special Appeals 2000.* It may also take notice how S&B kept characterizing the Notice of Dispute as a Motion to Dismiss, misleading the county court, which it clearly was not.

**27.** The plaintiff believes he has provided enough information in the complaint to give the defendant S&B fair notice of what the alleged claims are and the grounds upon which they rest. If the defendant is truly confused by the allegations in the complaint, hopefully the

exhibits included in this response will make it clear for the defendant and also the court.

28. S&B argues that the plaintiffs claims against it are time barred. The plaintiffs claims are alleged to have occurred within the 1 year statute of limitations of 15 U.S.C. § 1692k of the FDCPA. None of the violations of the FDCPA were alleged to have occurred in the initial communication from S&B, as S&B claims, just after it. According to previous cases in this district, all claims in this matter fall within the one year statute of limitations. This district appears to go by the opinion in *Stewart v. Bierman, 859 F. Supp. 2d 754 - Dist. Court, D. Maryland 2012,* "Generally, the statute of limitations begins to run when a communication violating the FDCPA is sent." *Akalwadi v. Risk Mgmt. Alts., Inc., 336 F.Supp.2d 492, 501 (D.Md.2004)* (citation omitted). "This Court, however, has applied the discovery rule in the debtor rights context and held that a FDCPA claim accrues at the time of the violation or when the plaintiff should have known of the violation." "Therefore, Plaintiffs' FDCPA claims are not barred by the applicable statute of limitations because they filed their Complaint within one year of discovering the Defendants' alleged fraudulent actions on which they base their claims."

29. The plaintiff believes he has met the pleading standards in regards to his claims under the FDCPA, where S&B argues he has not. A plaintiff satisfies their burden if they allege facts sufficient to allow a court to infer "more than the mere possibility of misconduct". *Ashcroft v. Iqbql*, 129 W.Ct. 1937, 1950 (2009). The plaintiff has alleged when the violations occurred, what section of the FDCPA was violated, who violated these sections, and how these violations occurred. The included exhibits, hopefully, should help bring more clarity to the allegations.

30. On page 8 of S&B's MTD, it comments on how the plaintiff challenges it's authority to

collect on the alleged debt. In the complaint, the plaintiff challenges S&B's authority to collect on the alleged debt as allowed in 15 U.S.C. § 1692e(5) "The threat to take any action that cannot legally be taken or that is not intended to be taken", and 15 U.S.C. § 1692f(6), "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest." The question of having authority ties in directly with the numerous listed violations of the FDCPA, and the listed violations in the FDCPA are not exhaustive and can be expanded, as evidenced here by this quote directly from the FDCPA; "Without limiting the general application of the foregoing, the following conduct is a violation of this section:" This sentence appears throughout the statute. The "documents" allegedly signed by the plaintiff involved only the supposed "Lender" as defined in the documents to be Bank of America N.A, and the borrower. S&B is not included in these documents, and has only become involved as an interloper and third party debt collector. All information received by the plaintiff from all parties claiming an interest in the plaintiffs property, does not support their claims.

31. Also on page 8, S&B claims the complaint fails to plead sufficient facts that give rise to any FDCPA claim, because the "misrepresentation" under 15 U.S.C. § 1692e must be material in nature. The explicit language in the FDCPA does not state anywhere that any misrepresentations must be material in nature, and the courts in this country have no latitude to determine what our Congress meant or intended to accomplish when it formulated and passed 15 U.S.C. § 1692 et. Seq. The courts have to follow the unambiguous law as written and not legislate from the bench. "Ignoring the carefully chosen language and policies of the FDCPA, which Congress spent a great deal of time and effort drafting and enacting, would

frustrate Congressional will and authority". *Heintz v. Jenkins, 115 S.Ct. 1489 (1995); Frey v. Gangwish, 970 F.2d 1516 (6th Cir. 1992).* (The FDCPA is "an extraordinarily broad statute" and must be enforced "as Congress has written it."). *Hamilton v. United Healthcare of Louisiana, Inc., 310 F.3d 385 (5th Cir. 2002).* ("Fifth Circuit law is clear that when, as here, the language of a statute is unambiguous, this Court has no need to and will not defer to extrinsic aids or legislative history.") "Where, as in the case of the FDCPA, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Scott v. Jones, 964 F.2d 314, 316 (4th Cir. 1992).* The Fourth Circuit refused to follow the debt collector's argument that the court resort to legislative history. It similarly refused later in Sayyed v. Wolpoff & Abramson, 485 F.3d 226 (4th Cir. 2007). (W&A asks that we disregard the statutory text in order to imply some sort of common law litigation immunity. We decline to do so. Rather, "where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2D 290 (1989)* (internal quotation marks omitted)

32. If this court is determined to rule that any misrepresentations that fall under 15 U.S.C. § 1692e must be material in nature, the plaintiff believes the violations he has alleged did occur are material in nature. "The Fourth Circuit has adopted the "least sophisticated consumer" standard to determine if a Section 1692e violation has occurred, i.e. a false statement that would not mislead the "least sophisticated consumer" is not actionable. *See* Nat'l Fin. Servs., Inc., 98 F.3d at 135-36; *see also* Lane v. Fein, Such & Crane,) *767 F.Supp.2d 382, 388 (E.D.N.Y.2011), "*As stated, this Court determined that a materiality requirement focuses on weeding out mere technical falsehoods that mislead no one, while covering "genuinely misleading statements that frustrate a consumer's ability to intelligently choose his or her

response." *Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010)*. "It is true

that, as stated in the Court's previous summary judgment opinion, "[g]enerally, material facts

are ones which, if known, might influence a person's decision on a matter." But the test for

**materiality under the FDCPA** is not whether a given individual was in fact influenced by

the false representation, but an "objective" inquiry into "whether the debt collector's

communication would deceive or mislead an unsophisticated, but reasonable, consumer."

*Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 995 (7th Cir. 2003)*. In other words, the

FDCPA "creates a strict-liability rule," *Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir.*

*2004) (Easterbrook, J.)*, and a debt collector may not escape liability simply because certain

wary debtors (or judges) were not actually fooled by the false statements at issue, or chose to

ignore them." *Midland Funding, LLC v. Brent*, Dist. Court, ND Ohio 2010. "The materiality

standard simply means that in addition to being technically false, a statement would tend to

mislead or confuse the reasonable unsophisticated consumer."*Wallace v. Washington Mut.*

*Bank, FA*, 683 F. 3d 323 - Court of Appeals, 6th Circuit 2012.

33. Defendant S&B has not claimed that alleged violations under 15 U.S.C. § 1692f must also

be material in nature, and the language of the FDCPA does not state this either, and as

previously stated, the courts of this country have a duty to follow the federal laws as written

by Congress.

34. On page 8 of S&B's MTD, it is stated "the borrower relies on a debt dispute that was

initially verified by Nationstar and subsequently by S&B, as found by the Circuit". The

plaintiff has alleged Nationstar and S&B violated the FDCPA after mailing the Notice of

Dispute ( Def. EX F here). The plaintiff is unclear on what defendant S&B is referring to in

this statement as there were no supporting documents filed as exhibits regarding the

mentioned Notice of Dispute. The plaintiff is unaware of the county court making any ruling

that any of the involved parties verified anything in response to the plaintiffs notices of

dispute, and the plaintiff is unaware of any ruling by the county court where it upheld

Nationstars right to foreclose. The plaintiff believes all of this is moot anyway as the court

here has to base its rulings on the alleged violations in the complaint, based on S&B's actions

as a debt collector in the matter.

35. Defendant S&B goes into an argument regarding 15 U.S.C. § 1692g and discusses matters of

initial communications, and avoids what was alleged in the complaint. The plaintiff never

alleged the filing of the foreclosure action triggered the initial communications requirement of

15 U.S.C. §1692g. S&B also never addresses the filing of the foreclosure action in March 3,

2016, without any verification on the part of S&B as a debt collector. It was alleged in the

complaint that S&B violated U.S.C. §1692g(b) in paragraph 27 of the complaint. The plaintiff

supports this alleged violation of U.S.C. §1692g(b) with EX 2 and with the following cases;

"Additionally, the facts demonstrate that **Shapiro** took debt collection actions subsequent to

Plaintiff disputing the debt by going through the foreclosure process." *Blick v. SHAPIRO &*

*BROWN, LLP*, Dist. Court, WD Virginia 2016 *See Townsend v. Fed. Nat. Mortg. Ass'n, 923*

*F. Supp. 2d 828, 840 (W.D. Va. 2013)* ("I find that the plain meaning of that phrase must

mean that a creditor cannot take action, in this case foreclosure, that would result in the

collection of the debt, until it has satisfied the prerequisites imposed by the statute."); *McCray*

*v. Fed. Home Loan Mortg. Corp.,* No. 15-1444, 2016 WL 5864509, at *4 (4th Cir. Oct. 7,

2016) (Defendants' foreclosure actions "were taken in connection with the collection of a debt

or in an attempt to collect a debt"); *Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373,*

*378 (4th Cir. 2006)* ("We hold that Defendants' foreclosure action was an attempt to collect a

`debt'. . . ."). Plaintiff has pled facts indicating that he disputed his debt, but did not receive

any response before debt collection activities continued, and thus has stated a claim for relief

under 15 U.S.C. § 1692g(b).

36. It appears S&B is attempting to avoid any obligation or requirement to respond to a written

Notice of Dispute before it takes any further action to collect an alleged debt. S&B shows a

history of this behavior in the previously cited *Blick* case. S&B states on pages 9 and 10 "The

borrower acknowledges in his own complaint that he received the validation of the debt." The

plaintiff actually acknowledged he received a verification/validation attempt from Nationstar,

not from S&B, in paragraph 19 of the complaint. This does not satisfy S&B's obligation and

requirement to respond to a Notice of Dispute before further collection attempts.

37. S&B attempts to show that it complied with its duty to verify an alleged debt with exhibit G

dated September 27, 2016, over 6 months after the foreclosure filing action on March 3, 2016.

This clearly does not show compliance with 15 U.S.C. § 1692g(b).

38. This was the only attempt at verification/validation the plaintiff has ever received from S&B,

and it hardly qualified as verification of its claim, as it merely copied information previously

received from other debt collectors claiming an interest in this matter. "The verification

requirement demands more than that the debt collector merely repeat its assertion that a debt

is due. Simply repeating second or third-hand information in the debt collector's file is

insufficient under the statute."*Dunham v. Portfolio Recovery Associates,L.L.C.*, 2009 WL

3784236 (E.D. Ark. Nov. 10,2009). Congress's intention when drafting the FDCPA was clear

when it stated "**A debt collector verifies a debt by providing information that is**

**responsive to the consumer's request.**" *See* H.R. Rep. No 31, 95th  Cong., 1st Sess. 5 1977.

39. S&B never addressed any of the questions the plaintiff addressed in his initial Notice of

Dispute (EX 2 of complaint). The plaintiff admits this is not your typical Notice of Dispute letter, but it is most assuredly not an "internet styled" letter. A lot of time and effort went into formulating this letter to try to receive some definitive verification of S&B's claim. Such verification was never received. In fact, all points raised in the letter were ignored.

40. In section D of the MTD, S&B seems to take issue with the plaintiff stating in the complaint, S&B "knew it was not entitled to collect on the alleged debt." The plaintiff bases this statement on the statements received from S&B's alleged client at the time, Nationstar, and the fact that there has not been any documentation, by accounting records, of any financial injury actually suffered by S&B's alleged client, Nationstar. The plaintiff has already articulated how Nationstar claimed in correspondence to the plaintiff that the owner of the alleged debt in question was Freddie Mac, not Nationstar. A month before the filing of the foreclosure action on March 3, 2016, Nationstar claimed in writing that Freddie Mac was the owner, but in the foreclosure action, Nationstar claimed it was the owner of the Note or loan, as the security instrument travels with the Note. There is nothing on record or any documents showing any transfer of the loan, or any related documents, in question from Freddie Mac to Nationstar for purposes of foreclosure. This is a major point of concern. If S&B had done any investigating or conducted any due diligence in regards to this, as it should have, it should have raised some red flags as to the veracity of its clients claims. This deals directly with the level of attorney involvement discussed in paragraphs 63-65 in the complaint. If any attorney had any meaningful involvement in the particulars of this alleged debt, again it should have raised red flags. In Exhibit 3, these Maryland agencies, agree in their opinions that Freddie Mac is the owner of the alleged loan. Exhibit 4 is a copy of a screenshot from Freddie Macs own website, called the loan lookup page, that shows Freddie Mac claims(ed)

ownership of the alleged loan since 2009. This means that all of the related loan documents, the Note and corresponding Deed, are/were owned and controlled by Freddie Mac. As has been layed out, there are no assignments from Freddie Mac to Nationstar, or any letters of authorization from Freddie Mac to act on their behalf.

41. Defendant S&B includes exhibit A in its MTD, citing paragraph 20 ("The Note or a partial interest in the Note(together with the security instrument) can be sold one or more times without **prior** notice to the borrower.) It appears that the loan in question here was sold to Freddie Mac soon after the alleged closing date of November 20, 2009, without the required notice as dictated in the provided sentence from paragraph 20. It does not say without any notice to the borrower, but says without **prior** notice, meaning at some point, the borrower had to be notified of the change in ownership to Freddie Mac, which did not occur.

42. The plaintiff notes here that in S&B's exhibit A, on page 2, it states "the borrower warrants and will defend generally the title to the property against all claims and demands, subject to encumbrances of record." The plaintiff is merely defending his property from what appears to be an illegal debt collection attempt, by parties "not entitled to collect on the alleged debt."

43. The plaintiff, here, is alleging violations of a federal law involving debt collection activity, not Maryland law, as S&B states in section D.

44. Exhibit 5 is provided here as support for the allegation in paragraph 52 of the complaint. Exhibit 5a is from page 8, paragraph 24, of S&B's exhibit A, where it states only the "Lender" can substitute the Trustee under the Deed of Trust. It doesn't mention anything about any assignees having any authority to substitute the Trustee. The violations alleged under 1692e, here, appear to be material in nature. Without the authority to act as Trustee, S&B's actions are false, deceptive, misleading, unfair to the plaintiff, and unconscionable.

**45**. Exhibit 6 is provided here as support for the allegation in paragraph 54 of the complaint. The plaintiff believes the allegations of violations under 1692e are material in nature as defined by the case law cited in this response.

**46**. Exhibit 7 is provided here as support for the allegation in paragraph 57 of the complaint. The plaintiff believes the allegations of violations under 1692e are material in nature as defined by the case law cited in this response, and the actions alleged, here, are false, deceptive, misleading, unfair to the plaintiff, and unconscionable.

**47**. Exhibit 8 is provided here as support for the allegation in paragraph 58 of the complaint. The plaintiff believes the allegations of violations under 1692e are material in nature as defined by the case law cited in this response.

**48**. All of these exhibits are documents received by the plaintiff from defendant S&B, within one year of the filing of this case.


## CONCLUSION

Plaintiff has plead facts sufficient to allow a court, drawing on "judicial experience and common sense", to infer "more than the mere possibility of misconduct", which easily satisfies his burden of pleading under Federal Rule of Civil Procedure 8(a)(2). See Ashcroft v. Iqbal, 129 S.Ct. at 1950. Plaintiff's claims should therefore survive dismissal.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order denying Defendant Shapiro & Brown LLP.'s Motion to Dismiss for Failure to State a Claim, and let the plaintiff get into discovery to get to the bottom of the matter. In the alternative, if the Court determines Plaintiff has

failed to state a claim, Plaintiff asks the Court to grant leave to amend his Complaint and clearly

articulate any deficiencies identified by this court.

                                   Respectfully Submitted,

                                   *Kevin Richardson*
                                   Kevin Richardson
                                   c/o 631 Railroad Avenue, #321
                                   Centreville, Maryland
                                   21617
                                   410 739 3606
                                   email: vinson49@gmx.com

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing was provided by regular U.S. mail to the parties listed below this 22nd day of May 2017.

Emily Michele Patterson
McGuireWoods LLP
7 Saint Paul Street
Suite 1000
Baltimore, MD 21202

William M. Savage, Esquire
Shapiro & Brown, LLP
10021 Balls Ford Road, Suite 200
Manassas, VA  20109

Rushmore Loan Management Services LLC.
15480 Laguna Canyon Rd., Suite 100
Irvine, CA. 92618

U.S. Bank N.A.
425 Walnut Street
Cincinnati, Ohio 45202

Kevin Richardson
c/o 631 Railroad Avenue, #321
Centreville, Maryland
21617
410 739 3606
email: vinson49@gmx.com